IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN DAILEY, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 3:12-cv-518-O | |
| § | | |
| CORDIS CORPORATION, § | | |
| § | | |
| Defendant. § | | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendant Cordis Corporation's Motion for Summary Judgment, Brief in Support, and Appendix in Support (ECF Nos. 24–26); Plaintiff John Dailey's Response in Opposition (ECF No. 29); and Defendant's Reply (ECF No. 31). Also before the Court is Plaintiff's Motion to Strike, in Part, Defendant's Summary Judgment Evidence (ECF No. 34). Having reviewed the motions and applicable law, the Court finds that Defendant's Motion for Summary Judgment should be and is hereby **GRANTED in part** and **DENIED in part** and that Plaintiff's Motion to Strike should be and is hereby **DENIED as moot**.

**I. BACKGROUND**

Plaintiff began working for Defendant in 2001 as the cardiology division manager and was promoted to Regional Sales Director for the endovascular division in 2008. Def.'s App. Supp. Mot. Summ. J. Ex. 1 (Dailey Dep.), at App. 6–7, ECF No. 26. In December 2004, Defendant required Plaintiff to sign the Employee Secrecy, Non-Competition and Non-Solicitation Agreement (the "Agreement"). *Id.* at App. 35; Pl.'s App. Supp. Resp. Def.'s Mot. Summ. J. Ex. 3 (Agreement), at

App. 32–35, ECF No. 29-3. The Agreement requires Plaintiff to refrain from certain competitive actions for eighteen months after the end of his employment with Defendant. Pl.'s App. Supp. Resp. Def.'s Mot. Summ. J. Ex. 3 (Agreement ¶ 6), at App. 33, ECF No. 29-3. The Agreement further provided:

> If I am unable to obtain employment consistent with my training and education solely because of prohibition of [the paragraphs containing non-competition and non-solicitation obligations] of this Agreement, or if I am able to obtain only a position in which my Gross Monthly Pay is less than what I last received from the COMPANY as Gross Monthly Pay, then any prohibition of those paragraphs that caused me to be unable to obtain such employment (or that is responsible for the above-referenced differential in pay), shall bind me only as long as the COMPANY shall make monthly payment to me equal to the lesser of (a) the amount last received from COMPANY as Gross Monthly Pay, or (b) the difference between my last Gross Monthly Pay at the COMPANY and my Gross Monthly Pay in any subsequent employment.

*Id.* Ex. 3 (Agreement ¶ 9), at App. 33, ECF No. 29-3. To receive payment, the Agreement required Plaintiff to submit certain information:

> In order to qualify for the payments provided for in paragraph 9 above, I understand that I must, for each month that I claim payment is due, represent to the Vice President of Human Resources of the COMPANY, in writing within fifteen (15) days following the end of that calendar month, that although I diligently sought employment consistent with my training and education, I was unable to obtain it, or was unable to attain a position in which my Gross Monthly Pay equaled what I last received from the COMPANY as Gross Monthly Pay, as the case may be, solely because of a prohibition in [the paragraphs containing non-competition and non-solicitation obligations] of this Agreement. I must also promptly submit such further information as the COMPANY may request to enable it to verify the accuracy of my representation. I understand that the COMPANY shall, at its option, be relieved of making a monthly payment to me for any month with respect to which I have failed to comply with a requirement of this paragraph 10.

*Id.* Ex. 3 (Agreement ¶ 10), at App. 33, ECF No. 29-3.

In November 2011, Defendant terminated Plaintiff, who then began looking for a new job. *Id.* Ex. 2 (Dailey Decl. ¶¶ 28, 36), at App. 28–29, ECF No. 29-2. On December 13, 2011, Plaintiff

sent an email to Defendant's Vice President of Human Resources, Warren Luther, asking for payment under the Agreement. Def.'s App. Supp. Mot. Summ. J. Ex. 3 (Luther Decl. ¶ 5, Ex. 1 (Dec. 13, 2011 email)), at App. 156, 157, ECF No. 26-6. In that email Plaintiff represented his inability to find a job for the preceding month was solely due to his non-competition obligations in the Agreement. *Id.* Ex. 3 (Luther Decl. Ex. 1 (Dec. 13, 2011 email)), at App. 157. Specifically, Plaintiff stated:

> I have made numerous attempts to secure a new job since my termination from Cordis on November 3, 2011. I have sent my resume to several recruiters as well as a follow up telephone call to discuss possible opportunities. I have also made several calls to my personal network of business associates who I have known for years to distribute my resume and to inform them of my job search. I have been on a number of different company websites to identify a job with no success. I signed onto Medreps.com to explore opportunities to attain a position that is consistent with my training and education.

*Id.* Plaintiff's counsel and Defendant responded back and forth for a few months, with Plaintiff demanding either payment or a release from his non-compete obligations and Defendant alleging that Plaintiff had not satisfied paragraph ten of the Agreement, which specified what he needed to prove in order to qualify for payment. *See id.* Ex. 3 (Luther Decl. ¶¶ 5, 8, Exs. 1–12 (Dailey's emails to Luther), Exs. 13–20 (Luther's email to Dailey), Ex. 21 (Fink's letter to Dailey's counsel), at App. 154, 157–73, 174–89, 190–91, at ECF No. 26-6.

In mid-April 2012, Plaintiff received an offer of employment from MedTel 24 and modified his demand for payment on May 11, 2012, requesting that Defendant pay the difference between Plaintiff's salary at MedTel and his salary at Cordis. *Id.* Ex. 3 (Luther Decl. ¶ 8, Ex. 6 (Dailey's email to Luther)), at App. 164–65, ECF No. 26-6. Defendant responded that the information

Plaintiff provided did not qualify him for payment under the non-compete. *Id.* Ex. 3 (Luther Decl. ¶ 8, Ex. 9 (Luther's email to Dailey)), at App. 169–70, ECF No. 26-6.

On January 12, 2012, Plaintiff filed this action alleging that Defendant breached the Agreement and requesting payment under the Agreement. *See* Notice of Removal Ex. 1 (Pl.'s Original Pet.), ECF No. 1-2. Defendant subsequently removed the case to this Court. *See* Notice of Remove, ECF No. 1. On May 12, Defendant filed a counterclaim seeking recovery from Plaintiff of all sums it paid him and others as a result of Plaintiff improperly obtaining and approving expense reimbursements in violation of Defendant's policy and Plaintiff's duty of loyalty. *See* Counterclaim, ECF No. 7. Plaintiff filed an Answer to Defendant's Counterclaim on October 17, 2012. *See* Answer, ECF No. 10.

## II. LEGAL STANDARD

### A. Summary Judgment Standards

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "[T]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### B. Rules of Interpretation Applied to Contracts

It is well-settled law that the interpretation of an unambiguous contract is a question of law for the court to decide. *Guidry v. Halliburton Geophysical Servs. Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). A district court sitting in diversity will look at state law to provide the applicable rules of contract interpretation, which in this case is Texas. *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 443 (5th Cir. 1994).

Under Texas law, a contract is not ambiguous when, based on the plain language, the Court can give it a certain or definite legal meaning or interpretation. *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *R & P Enters. v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 519 (Tex. 1980). When a contract is unambiguous, extrinsic evidence that creates an ambiguity or varies the meaning of the plain language is not considered. *Lewis v. E. Tex. Fin. Co.*, 146 S.W.2d 977, 980 (Tex. 1941). Further, a contract is not ambiguous simply because the parties advance different interpretations. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Here, none of the parties allege that the provisions in the contract are ambiguous and the Court agrees. Therefore, the Court's analysis is limited to looking at the plain language within the "four corners" of the contract to determine the proper interpretation. *Luckel v. White*, 819 S.W.2d 459, 461–63 (Tex. 1991).

To determine the meaning of language in the contract, the Court is guided by well-established rules of interpretation. First, the Court's primary goal is to give effect to the parties' intent as expressed in the writing. *Id.* The applicable standard is the "objective intent" as evidenced by the language used in the contract, rather than the "subjective intent" of the parties. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). Additionally, the Court should interpret the contract as a whole and harmonize all the provisions so that none is rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Further, "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* Finally, the Court should not construe a contract provision in a manner that is unreasonable or absurd. *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987) (stating courts should avoid, when possible, construction that is unreasonable, inequitable, and

oppressive); *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) (stating that when interpreting a contract, a court should avoid, if possible, construction that is unreasonable, oppressive, inequitable, or absurd).

On December 7, 2012, Defendant filed its motion for summary judgment. *See* Def.'s Mot. Summ. J., ECF No. 24. Plaintiff filed his response and Defendant filed its reply. *See* Pl.'s Resp. Def.'s Mot. Summ. J., ECF No. 28; Def.'s Reply Supp., ECF No. 31. Accordingly, this motion is ripe for consideration.

## III. ANALYSIS

Defendant moves for summary judgment on Plaintiff's breach of contract claim and on its counterclaim. *See generally* Def.'s Mot. Summ. J., ECF No. 24. The Court will address each in turn.

### A. Breach of Contract

First, Defendant alleges that Plaintiff's breach-of-contract claim fails because the provision that Defendant allegedly breached—paragraph nine—"includes no promise by [Defendant], even a conditional promise, to pay him anything." Def.'s Br. Supp. Mot. Summ. J. 9, ECF No. 25. Instead, Defendant claims "[i]t simply allows [Defendant] the right to make payments in specified circumstances in the company's discretion." *Id.* Defendant argues that if it fails to pay Plaintiff, then the non-compete no longer binds himthe employee; thus Defendant has no requirement or obligation to pay at all. *Id.* Defendant further asserts that this provision only comes into play in certain circumstances, for example, if Defendant attempts to enforce the non-compete against Plaintiff, then Plaintiff can assert as a defense Defendant's failure to pay. *Id.*

Plaintiff responds that Defendant's interpretation, which grants the company an "option" to pay, has no basis in the text because paragraph nine does not contain the words "option", "election", "choice", or similar language. Pl.'s Br. Resp. Def.'s Mot. Summ. J. 14, ECF No. 29-1. Plaintiff argues that Defendant's only option to refuse payment arises when Plaintiff fails to satisfy the requirements of paragraph ten, which calls for Plaintiff to demand payment and any information that Defendant requests in support of that demand. *Id.*

Plaintiff also argues that the Agreement allows Plaintiff an election of remedies and Plaintiff's continued performance and compliance with the non-compete makes the unilateral contract enforceable. Pl.'s Br. Resp. 15, ECF No. 29-1 (citing *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 650–51 (Tex. 2006)). As Plaintiff sees it, Defendant's reading of the Agreement—that Plaintiff is not bound by the non-compete if Defendant does not make payments—is nonsensical: "[B]y the time [Defendant] must make a payment and failed to do so, [Plaintiff] must have (1) endured a month of unemployment due to his non-compete, (2) provided written notice to Cordis no later than the 15th of the following month, (3) and received no payment from Cordis after an unspecified period of time." *Id.* at 16. Plaintiff implies that this reading is unfair because Defendant can refuse to pay Plaintiff in December of 2011 for Plaintiff's unemployment in November 2011 and "somehow [Plaintiff] is [then] relieved of the obligation he already performed." *Id.* In essence, Plaintiff argues that by complying with the non-compete, Defendant must pay him at least one month's salary. *Id.*

The Court finds Plaintiff's argument unavailing in light of the Agreement's language. The relevant language states that "any prohibition of those paragraphs that caused me to be unable to obtain such employment (or that is responsible for the above-referenced differential in pay), shall

8

bind me only *as long as* the COMPANY shall make monthly payment to me." Pl.'s App. Supp. Resp. Def.'s Mot. Summ. J. Ex. 3 (Agreement ¶ 9), at App. 33, ECF No. 29-3 (emphasis added). Based on the plain language, this means that whether the non-compete binds Plaintiff is dependent on Defendant making the required monthly payments.[1] *See Universal Health Servs.*, 121 S.W.3d at 746 ("If contract language can be given a certain or definite meaning, then it is not ambiguous; it should be interpreted by a court as a matter of law."). To state it differently, the Agreement's "as long as" language provides no promise to pay Plaintiff.

The Agreement only specifies that Defendant must pay Plaintiff if it wants to be able to enforce the non-compete against him. Once Defendant failed to pay Plaintiff under the non-compete, Plaintiff's remedy was not breach of contract. Instead, Defendant's failure to pay released Plaintiff from the non-compete, and Plaintiff could then obtain a job that otherwise would violate the non-compete provision of the contract. This interpretation is consistent with how Texas courts routinely interpret this "as long as" language. *See, e.g.*, *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002) ("[A] typical Texas lease that lasts 'as long as oil or gas is produced' automatically terminates if actual production permanently ceases . . . ."); *Am. Med. Enters., Inc. v. Rowley*, No. 12-05-00047-CV, 2006 WL 860094, at *5 (Tex. App.—Tyler Mar. 31, 2006, pet. denied) (mem. op.) (stating that a contract that offered plaintiff a retention bonus for new business she brought to the company "as long as they are a client of AME" meant that "she would receive the [payment] bonus if the clients she brought to AME continued to do business with AME").

---

[1] This is assuming that Plaintiff complies with the reporting requirements in paragraph ten of the Agreement.

Furthermore, the Court finds unpersuasive Plaintiff's argument that continuing to perform under the contract by following the non-compete made this unilateral contract enforceable. Plaintiff provides no support that this Agreement is a unilateral contract that Plaintiff can "accept" by abiding by the non-compete. Again, the language in the Agreement requires that Plaintiff is bound by the non-compete if Defendant makes the required payments. Defendant's failure to do so releases Plaintiff of his obligations under the non-compete. No part of the Agreement requires Defendant to pay Plaintiff money, whether based on Plaintiff's conduct or otherwise. Based on the foregoing, the Court finds that Defendant's motion for summary judgment on Plaintiff's breach of contract claim should be and is hereby **GRANTED**.

### B. Defendant's Counterclaim

On May 11, 2012, Defendant filed a counterclaim against Plaintiff alleging that Plaintiff breached his duty of loyalty to Defendant because Plaintiff incurred and authorized clearly improper business-expense reimbursements. *See* Counterclaim, ECF No. 7. Plaintiff failed to answer or otherwise respond until October 17, 2012, filing his answer without leave. Pl.'s Ans., ECF No. 10. Defendant moves for summary judgment on its counterclaim based on two grounds: (1) Plaintiff's untimely response and (2) on the merits. Def.'s Br. Supp. Mot. Summ. J. 18, ECF No. 25. The Court will address each in turn.

#### 1. Failure to Timely Respond to the Counterclaim

First, Defendant asserts that Plaintiff's failure to timely respond to the counterclaim warrants judgment in its favor. *Id.* Citing Federal Rule of Civil Procedure 12(a)(1)(B), Defendant argues that because Plaintiff failed to timely respond to its counterclaim, all the allegations in the counterclaim are deemed admitted based on Rule 8(b)(6). *Id.* Defendant further argues that the Court should

disregard Dailey's untimely response because he did not seek leave to file or show good cause or excusable neglect as required under Rule 6(b)(1)(B). *Id.* at 18 n.15. Therefore, Defendant concludes, that it is entitled to summary judgment as to liability on this claim. *Id.* at 19. Plaintiff responds that Defendant had an opportunity to file a Motion to Strike Plaintiff's untimely answer or a Motion for Entry of Default, but did not do so, and cannot obtain this remedy through summary judgment. Pl.'s Br. Resp. Def.'s Mot. Summ. J. 24, ECF No. 29.

The Court finds that Defendant is essentially requesting that Court strike Plaintiff's untimely answer. Although there is broad discretion in striking a pleading, motions to strike are generally disfavored. *See, e.g.*, *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868–69 (5th Cir. 1962); *Am. S. Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 626–27 (E.D. Tex. 2010) ("[Motions to strike] are viewed with disfavor and infrequently granted, both because striking portions of pleadings is a drastic remedy and because it is often sought by a movant simply as a dilatory tactic.") *Software Publishers Ass'n v. Scott & Scott, LLP*, No. 3:06-cv-0949-G, 2007 WL 2325585, at *1 (N.D. Tex. Aug. 15, 2007) (stating motions to strike are disfavored).

Further, if the Court either strikes the Plaintiff's answer or deems the allegations in Defendant's counterclaim admitted under Rule 8, then the Court would essentially be converting Defendant's summary judgment into a default judgment. This result "would contravene the established policies disfavoring motions to strike and favoring resolution of cases on their merits." *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 8 (D.D.C. 2004) (citations omitted); *see also Buckley*, 748 F. Supp. 2d at 626–27 (denying motion to strike because granting it on the sole basis that responsive pleadings were untimely "would be a drastic and harsh remedy"). The Fifth Circuit disfavors an "automatic grant, upon failure to comply with such rules, of motions that are

dispositive of the litigation." *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006). Also, the Fifth Circuit explains that "absent a clear record of delay or contumacious conduct" a district court should "consider whether less severe sanctions would suffice." *Id.* "It does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a party because a deadline is missed." *Hadra v. Herman Blum Consulting Eng'rs*, 74 F.R.D. 113, 114 (N.D. Tex. 1977).

Additionally even if a motion to strike is technically appropriate, motions to strike are often denied in the absence of a showing of prejudice to the moving party. *Buckley*, 748 F. Supp. 2d at 626–27 (weighing prejudice of striking answer to prejudice due to untimeliness); *Wilson v. King*, No. 06-cv-2608-O, 2010 WL 678102, at *4 (E.D. Pa. Feb. 24, 2010) (same); *Mitchell*, 2008 WL 4145449, at *2 (same). Here Defendant has failed to demonstrate what prejudice, if any, it has suffered as a result of Plaintiff's late filing. Thus, the prejudicial effect on Defendant does not outweigh the significant interest the Court has in deciding the case on the merits.

Because of the disfavor of motions to strike, the lack of prejudice suffered by Defendant, and the need to consider less severe sanctions, the Court accepts Plaintiff's untimely answer to Defendant's counterclaim. Accordingly, it turns to the merits of Defendant's counterclaim.

### 2. Merits of the counterclaim

Because the Court finds a genuine issue of material fact as to Defendant's counterclaim, Defendant's motion for summary judgment should be and is hereby **DENIED**.

## IV. CONCLUSION

It light of the foregoing, the Court finds that Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim is **GRANTED**, Defendant's Motion for Summary Judgment on

its counterclaim is **DENIED**, and Plaintiff's Motion to Strike is **DENIED as moot**.  Accordingly, it is **ORDERED** that Plaintiff's breach of contract claim is **DISMISSED with prejudice**.

    **SO ORDERED** on this **26th day** of **March, 2013.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**